**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Stamper, | No. CV-22-00155-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Freebird Logistics Incorporated, et al., | |
| Defendants. | |

Plaintiff Gregory Stamper moves for default judgment against Defendants Freebird Logistics, Inc. and Jeffrey Larsen (collectively, "Defendants"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 11.) The Defendants have not appeared or filed any response. For the reasons discussed below, the motion for default judgment is granted and Stamper is awarded $5,333.44 plus reasonable attorneys' fees and costs and post-judgment interest.[1]

**I.   BACKGROUND[2]**

Jeffrey Larsen owns and operates Freebird Logistics Inc. ("Freebird"), "a delivery company contracted to provide delivery services for Fed Ex." (Doc. 1 ¶¶ 9, 29.) Between September and October 2021, Stamper worked as a driver and driver's helper for Freebird, where his job duties consisted entirely of manual labor. (Doc 11-1 ¶¶ 6, 7.) Stamper worked

---

[1] Madison Andrade, a rising second-year law student at the Sandra Day O'Connor College of Law at Arizona State University, assisted in drafting this Order.
[2] "Upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *NewGen LLC v. Safe Cig LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

for Freebird for 8 shifts at approximately 12 hours each, for a total worktime of 96 hours. (*Id.* ¶¶ 6, 8.) During Stamper's first week he worked 72 hours, resulting in 32 hours of overtime. (*Id.* ¶ 9.) During his second week, he worked 24 hours. (*Id.* ¶ 10.) For this work, Stamper's pay was supposed to be $200 per day. (*Id.* ¶ 7.)

In January 2022, Stamper filed a complaint seeking relief for unpaid wages, overtime wages and minimum wages. (Doc. 1 ¶ 1.) He alleged Defendants failed to pay him any wages for the time he spent working at Freebird. (*Id.* ¶ 38.) Defendant Jeffrey Larsen was served for both himself and Defendant Freebird on February 9, 2022. (Docs. 6, 7.) Service was not executed on the remaining defendants, Jane Larsen, Kurt Larsen and Jane Doe Larsen II. (*See* Doc. 4.) Neither Larsen nor Freebird has filed an answer, a motion to dismiss, or any other response. Upon Stamper's application (Doc. 9), the Clerk of the Court entered default against Jeffrey Larsen and Freebird. (Doc. 10.) Stamper subsequently filed the pending motion for default judgment. (Doc. 11.) No response has been filed.

## II.   LEGAL STANDARD

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Brooke v. Sai Ashish Inc.*, No. 1:21-cv-00967-AWI-SAB, 2021 WL 4804220, at *5 (E.D. Cal. Oct. 14, 2021) (explaining that default judgment "is a two-step process: an entry of default judgment must be preceded by an entry of default"). The Court may consider several factors when deciding to grant default, including

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Stamper "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct.

18, 2021). Stamper also bears the burden of proving all damages. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### III. DISCUSSION

#### A. Jurisdiction, Venue, and Service

"When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Stamper asserts claims arising under the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA") and the Arizona Wage Act ("AWA"). (Doc. 1 ¶ 1.) The district courts of the United States have subject matter jurisdiction over claims arising out of federal law, including the FLSA, under 28 U.S.C. § 1331. Stamper's state law claims, under both the AMWA and AWA, form "part of the same case or controversy under Article III of the United States Constitution" as his FLSA claim. 28 U.S.C. § 1367. (*Id.* ¶ 5.) Thus, the Court has supplemental jurisdiction over Stamper's state law claim. Stamper asserts that venue and personal jurisdiction requirements are satisfied because the Defendants "regularly conduct business in and have engaged in the wrongful conduct . . . in [] this judicial district." (Doc. 1 ¶ 6, Doc. 11-1 ¶¶ 2–3.) Therefore, "a substantial part of the events or omissions giving rise to the claim" occurred in this district so venue is proper, and the Court finds it has personal jurisdiction over the parties. 28 U.S.C. § 1391(b)(ii).

Federal Rule of Civil Procedure 4(e) explains that service is properly executed by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A–B). Here, Jeffrey Larsen was personally served on February 9, 2022, and at that time, he advised the process server that he was unmarried. (Docs. 7, 8.) Larsen was also served for Freebird on the same date. (Doc. 6.) Larsen acknowledged service of the lawsuit through a text message to Stamper reading, "[g]ot your complaint for wages" eighteen days after service. (Doc. 11-2 at 2.) Accordingly, both Jeffrey Larsen and Freebird were properly

served.

### B. Default Judgment

#### 1. The first, fifth, sixth and seventh *Eitel* factors

Defendants have yet to respond or participate in this litigation. Traditionally, this means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (noting that the first, fifth, and sixth *Eitel* factors supported granting default judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect). The first factor weighs in favor of default judgment because denying Stamper's application will leave him "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true, . . . no genuine dispute of material facts would preclude granting" the motion for default judgment. *Id.* Relatedly, the sixth factor weighs in favor of default judgment. Because the Defendants were properly served (Docs. 6, 7), it is unlikely that their failure to answer was the result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (arguing that there is likely no excusable neglect where the defendant was properly served with the complaint). Furthermore, the lack of excusable neglect is apparent when considering Defendants' text message acknowledging receipt of the complaint. (*See* Doc. 11-2 at 2.) Finally, although the seventh factor, which considers the policy favoring a decision on the merits, generally weighs against default judgment, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. This factor alone is not sufficient to preclude the entry of default judgment in this case.

#### 2. The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a

plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The Court addresses Stamper's claims under the FLSA, AMWA and AWA respectively.

### i. FLSA claims

Before turning to the merits of his claims under the FLSA, AMWA and AWA for unpaid wages, overtime wages and minimum wages, the Court must analyze the status of Stamper as an employee within the meaning of all three acts. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d).[3] The Ninth Circuit has traditionally employed a six factor "economic reality" test to distinguish between employees and independent contractors. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). No one factor in the test is dispositive. *Id.* Instead, the determination depends "upon the circumstances of the whole activity."[4] *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

The economic reality test is comprised of six factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real*, 603 F.2d at 754.

The first factor, the employer's degree of control, weighs in favor of Stamper's claim. Stamper alleges the Defendants exercised control over the manner in which Stamper performed his work as a delivery driver. In doing so, Stamper alleges the bare minimum,

---

[3] Both the FLSA definitions of "employer" and "employee" include some limited exceptions. 29 U.S.C. § 203(d) and (e)(2–4). However, none apply to these facts. *Id.* As a result, a discussion of the exceptions is omitted.

[4] The subjective intent of the parties bears no consideration on the Court's analysis of "circumstances of the whole activity." *Real*, 603 F.2d at 754.

even pasting in conclusory statements from case law when explicating allegations. For example, Stamper states, "Defendants . . . had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants . . . ." (Doc. 1 ¶ 12.) This language is a direct quote from *Bonnette v. Cal. Health and Welfare Agency*. 704 F.2d 1465, 1470 (9th Cir. 1983) (holding the relevant factors of the "economic reality" test include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records"). Nevertheless, Stamper's cursory allegations are sufficient here to determine the extent of Defendants' control. Stamper also alleges Defendants maintained control over his work schedules, wherein they scheduled him to work between 10 and 12 hours per day. (Doc. 1 ¶ 35.) Defendants classified Stamper as a W-2 employee, suggesting an increased degree of control. (Doc. 1 ¶ 42.) *See Smith v. Dutra Trucking Co.*, 410 F. Supp. 513, 516 (N.D. Cal. 1976), *aff'd*, 580 F.2d 1054 (9th Cir. 1978) (finding an employer has minimal control over an independent contractor); *Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (holding that a doctor was an independent contractor in part because he never received a W-2). Thus, this factor weighs in favor of Stamper's claim.

The second factor contemplates the alleged employee's opportunity for profit and loss. This weighs in Stamper's favor. Stamper contends that "Defendants, in their sole discretion, paid [him] a daily rate of $200.00." (*Id.* ¶ 34.) When a worker is paid a fixed wage, with no opportunity for commission or bonus, that weighs in favor of employee status. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998); *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037 (D. Or. Apr. 28, 2010); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 580 (D. Md. 2008) ("[w]here the putative employee's work is, by its nature, time oriented, not project oriented, courts have weighed [this factor] in favor of employee status"). Given Stamper's fixed daily rate, the

Court finds the second fact to weigh in favor of employee status.

The third factor, pertaining to the relative investments of the alleged employer and employee in the business, also weighs in favor of Stamper's claim. To weigh against the finding of employment, the plaintiff's level of investment "must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Baker*, 137 F.3d at 1442 (quotation marks omitted). Stamper does not allege any personal financial investment in Freebird. Additionally, Stamper was not permitted to hire any employees, nor exercise discretionary judgment of significant matters. (Doc. 1 ¶¶ 45, 48.) For those reasons, this factor weighs in favor of Stamper's claim.

The fourth factor looks to the degree of skill necessary to perform the alleged employee's work. "A minimal level of skill weighs in favor of finding that an individual was an employee, rather than an independent contractor." *Dyrhaug v. Tax Breaks Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *9 (D. Ariz. Sept. 15, 2015). This factor decisively weighs in favor of Stamper's claim. Stamper was employed as a driver and a driver's helper for Defendants' package delivery service. (Doc. 11-1 ¶ 6.) His job duties consisted entirely of manual labor. (*Id.* ¶ 7.) Manual labor does not constitute a skill outside of the ordinary, thus, the fourth factor weighs in favor of Stamper's claim. *See Artola v. MRC Express, Inc.*, No. 14-CV-23219, 2015 WL 12672722, at *8 (S.D. Fla. Sept. 25, 2015) ("Driving is not a special skill. Neither is manual labor (loading and unloading vehicles).").

The fifth factor contemplates the permanence of the working relationship between the alleged employer and employee. Stamper only worked for Freebird for 8 shifts, or approximately 96 hours. (Doc. 11-1 ¶ 6.) Outside of this, the complaint lacks sufficient allegations for the Court to determine the permanence of the working relationship. This factor weighs neutrally.

The sixth and final factor considers whether the alleged employee's rendered services were an integral part of the alleged employer's business. Defendants owned and operated a delivery company contracted to provide delivery services for FedEx. (Doc. 1

¶¶ 9, 29.) Beyond the fact that he was employed as delivery driver, Stamper does not allege any other facts relevant to this factor. (*Id.* ¶ 33.) The Court assumes, however, that Freebird was dependent upon its delivery drivers. This presumption is supported by Defendant Larsen's communication with Stamper wherein he writes, "I'll pay you 150 for your helper days and 175 for your driving days as you came in and quit and left us short a driver the day you quit." (Doc. 11-2 at 2.) This language—"you left us short a driver the day you quit"—underscores the delivery drivers' importance to Freebird's operations. (*Id.*) The above application of the six factors composing the Ninth Circuit's economic reality test demonstrates that Stamper was an employee of the Defendants under the FLSA.

### ii. AMWA claims

The AMWA, like the FLSA, defines an "employee" as "any person who is or was employed by an employer." A.R.S. § 23-362(A). It defines an "employer" as "any corporation proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, [and] individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee." A.R.S. § 23-362(B). To determine whether a worker is an employee under the AMWA as opposed to an independent contractor, the AMWA instructs courts to look "to the standards of the federal [FLSA]." A.R.S. § 23-362(D). Unlike the FLSA, the AMWA places the "burden of proof . . . upon the party for whom the work is performed to show independent contractor status by clear and convincing evidence." *Id.* Defendants do not meet this burden since they have not appeared. Because A.R.S. § 23-362(D) mandates the same result reached under the FLSA, Stamper was an employee under the AMWA.

### iii. AWA claims

Similarly to the FLSA and the AMWA, the AWA defines an "employee" as "any person who performs services for an employer under a contract of employment either made in this state or to be performed wholly or partly within this state." A.R.S. § 23-350(2). In contrast, its definition of "employer" is defined much more narrowly than the FLSA and AMWA. AWA defines "employer" as "any individual, partnership, association, joint stock

company, trust or corporation, the administrator or executor of the estate of a deceased individual or the receiver, trustee or successor of any of such persons employing any person." A.R.S. § 23-350(3). This definition interprets the term "employer" to include a corporation, but not the agents of the corporation, thus limiting individual liability. *Rosen v. Fasttrak Foods LLC*, No. CV-19-05292-PHX-DWL, 2021 WL 2981590, at *5 (D. Ariz. July 15, 2021). The Court finds Defendants' classification of Stamper as a W-2 employee to be evidence that Stamper was an employee not a contractor. (Doc. 1 ¶ 42.) *See Rush v. Watkins Motor Lines, Inc.*, 58 F. App'x 320, 321 (9th Cir. 2003) (finding the lack of a W-2 to be indicative of a worker's status as a contractor, not an employee). Further, Defendants "own and[] operate as Freebird Logistics, an enterprise located in Maricopa County, Arizona." (Doc. 1 ¶ 29.) Additionally, Freebird is "a delivery company located in Phoenix, Arizona" (*Id.* ¶ 30.) Stamper alleges that in the duration of his work he resided in Maricopa County, Arizona. (*See id.* ¶ 7.) Given this, the Court infers that the contract of employment was made to be performed wholly or partly within the state of Arizona.

### iv. Summary

Stamper is an employee, as opposed to an independent contractor, under the statutory definitions of the FLSA, the AMWA and the AWA. 29 U.S.C. § 203(e)(1); A.R.S. § 23-362(A); A.R.S. § 23-350(2). Accordingly, he argues that he is entitled to statutorily guaranteed unpaid and overtime wages, as well as unpaid minimum wages. (*Id.* ¶ 1.) Because the Court takes these allegations as true, *NewGen*, 840 F.3d at 617, Stamper "has stated a claim on which [he] may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Streeter*, 438 F. Supp. 2d at 1071. In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin v. Combs*, 285 F.3d

899, 906 (9th Cir. 2002). A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Here, Stamper seeks the unpaid minimum and overtime wages he is owed under the FLSA and AMWA, along with liquidated damages. He also seeks the owed unpaid wages under the AWA.[5] Stamper asserts he is entitled to $5,333.44 in damages, not including reasonable attorney's fees. (Doc. 11-1 ¶ 18.) The Court finds that the stated damages are not disproportionate or inappropriate based on Stamper's 29 working hours.

Because six of the seven *Eitel* factors weigh in favor of Stamper, he is entitled to default judgment on his claim for unpaid overtime and minimum wages under the FLSA, AMWA and AWA. *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *2–6 (D. Ariz. Dec. 2, 2019) (similarly granting default judgment where each *Eitel* factor, except for the seventh, supported doing so).

### 1. Damages

Having found that entry of default judgment is proper, the Court must address damages. 29 U.S.C. § 216(b) defines the damages to be awarded in a failure to pay overtime wages under the FLSA. The FLSA states an employee is entitled to "unpaid minimum wages, [] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages . . . [including] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Double damages are the norm. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003). Likewise, A.R.S. § 23-364(G) sets out the damages to be awarded in a failure to pay minimum wages under the AMWA. Under the AMWA, the employee is entitled to "the balance of the wages . . . including interest thereon, and an additional amount equal to twice the underpaid wages . . . . A prevailing plaintiff shall be entitled to reasonable attorney's fees and costs of suit." A.R.S. § 23-364(G). Similarly, the

---

[5] The Ninth Circuit has held employers individually liable under the FLSA. *See e.g., Walsh v. Wellfleet Commc'ns*, No. 20-16385, 2021 WL 4796537, at *2 (9th Cir. Oct. 14, 2021). Likewise, the District of Arizona has held that employers may be individually liable under both the FLSA and the AMWA. *See e.g., Rosen v. Fasttrak Foods LLC*, No. CV-19-05292-PHX-DWL, 2021 WL 2981590, at *5 (D. Ariz. July 15, 2021). In contrast, the AWA states individual liability is not authorized "against the owners, officers, and directors of a corporate employer in a case where the claim is for the employer's wholesale failure to pay wages." *Id.*

AWA states that failure to pay wages to an employee may result in recovery "against an employer or former employer [for] an amount that is treble the amount of the unpaid wages." A.R.S. § 23-355.

"To recover damages after securing a default judgment, a plaintiff must prove the relief [he] seek[s] through testimony or written affidavit." *Yelp, Inc. v. Catron*, 70 F. Supp. 2d 1082, 1100–01 (N.D. Cal. 2014). Here, Stamper submitted a sworn affidavit demonstrating his hours worked and the resulting wages. (Doc. 11-1.) Stamper calculated that he worked for approximately 96 hours, or 12 hours per day for 8 days. (*Id.* ¶¶ 6, 8.) Stamper alleges his rate of pay was $200 per day. (*Id.* ¶ 7.) As referenced, Stamper is entitled to double damages under the FLSA, 29 U.S.C. § 216(b), and to treble damages under the AMWA and AWA, A.R.S. §§ 23-355(A), 23-364(G). Using the AWA's higher treble-damages penalty, Stamper is owed $4,800.00 in unpaid wages.[6]

Stamper is further entitled to unpaid overtime equaling to $16.67 per hour for each hour worked in excess of 40 hours per week during his first week of work.[7] Stamper worked 32 hours of overtime. (*Id.* ¶ 9.) Given the nature of the delivery services, with employment largely involving interstate commerce, Stamper is subject to 29 U.S.C. § 207(a). Due to this, his hours amount to $266.72 in unpaid overtime.[8] This number must be doubled pursuant to 29 U.S.C. § 216(b), totaling $533.44. Combining the unpaid and overtime wages, Stamper is entitled to $5,333.44, plus reasonable attorneys' fees and costs.

### C. The Kurt Larsen and Jane Doe Defendants

Stamper named Kurt Larsen and his spouse, Jane Doe Larsen II, as well as Jane Doe Larsen, the spouse of Defendant Jeffrey Larsen, as Defendants. (Doc. 1.) Stamper has not served Kurt Larsen, nor the Jane Doe Defendants as required by Rule 4. Accordingly, default has not been entered pursuant to Rule 55(a) against these Defendants. The Court

---

[6] This number was calculated by multiplying $200 (Stamper's unpaid daily rate) by 8 (Stamper's days worked), and trebling the resulting number. This amounts to 1,600 multiplied by 3, with a total number of 4,800.
[7] This number was calculated by dividing $200 (Stamper's unpaid daily rate) by 12 (Stamper's hours worked).
[8] This number was calculated utilizing 29 U.S.C. § 207(a), the code on employee engagement in interstate commerce. The code instructs that employers must compensate at "a rate not less than one and one-half times the regular rate at which he is employed."

- 11 -

will dismiss Defendants Kurt Larsen, Jane Doe Larsen II and Jane Doe Larsen.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Gregory Stamper's Motion for Default Judgment (Doc. 11) in part.

**IT IS FURTHER ORDERED** dismissing Defendants Jane Doe Larsen, Kurt Larsen and Jane Doe Larsen II, for Stamper's failure to serve.

**IT IS FURTHER ORDERED** awarding Gregory Stamper $5,333.44 plus a reasonable award of attorneys' fees and costs, as well as pre- and post-judgment interest.

**IT IS FURTHER ORDERED** that pursuant to § 29 U.S.C. § 216(b), Stamper may collect unpaid overtime damages from Jeffrey Larsen, but all unpaid wages may only be collected from Freebird Logistics, Inc.

**IT IS FURTHER ORDERED** that Gregory Stamper shall have thirty days from the date of this Order to file a motion for attorneys' fees and costs that complies in all respects with LRCiv 54.2.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 27th day of June, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge